COMUNIDAD RELIGIOSA CATÓLICA DE REVERENDAS MADRES CARMELITAS CALZADAS, INC. DE SAN JUAN, PUERTO RICO, demandante y apelante, *v.* NEFTALÍ REYES ARROYO, demandado y apelado.

Núm. 8859.—*Sometido:* Enero 19, 1944. *Resuelto:* Abril 26, 1944.

494

*José Bonet,* abogado de la apelante; *R. Castro Fernández* y *Enrique Segarra, Jr.,* abogados del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El presente es un recurso (*a*) para que se declare nula la cancelación hecha por el registrador de la propiedad de un censo que gravaba cierta finca urbana, (*b*) para que se vuelva a anotar el referido censo y (*c*) para cobrar los réditos dejados de pagar desde la cancelación del censo. La demandante ha apelado de una sentencia de la corte de distrito declarando con lugar la excepción previa interpuesta contra la demanda por el fundamento de que los hechos alegados no constituían una causa de acción.

Los hechos en este caso son como sigue: en el 1814 se constituyeron varios censos sobre una casa sita en San Juan. Uno de ellos era de 300 pesos a favor de Las Madres Carmelitas. Este censo se inscribió en los libros de las antiguas anotadurías, y cada vez que se enagenaba el inmueble los distintos compradores reconocían la existencia de este censo y rebajaban su valor del precio de venta. En dicha forma Josefa María Borges, en 1891, adquirió la propiedad, quien a su vez en 1894 la traspasó bajo las mismas

circunstancias a Manuela Fernández Noell. Al inscribirse estos dos últimos documentos de compraventa en los modernos libros del registro [1] se mencionó el censo en cuestión pero no hubo constitución expresa del gravamen. De la misma manera, cuando Manuela Fernández Noell hipotecó la finca en 1915, la existencia de este censo sólo se mencionó en la escritura de hipoteca y en su inscripción.

Manuela Fernández Noell pagó hasta el 1929 el 5 por ciento anual sobre el capital del censo según éste disponía. En dicho año solicitó y obtuvo que el Registrador cancelara la referida mención del censo de conformidad con la Ley número 12, Leyes de Puerto Rico de 1923 (Sesión Extraordinaria) y la Ley número 12, Leyes de Puerto Rico de 1924, (Sesión Extraordinaria). En 1934 Manuela Fernández Noell vendió la propiedad a Neftalí Reyes Arroyo. La escritura de compraventa no hizo relación alguna de la existencia de este censo y fué inscrita libre de gravámenes.

La nueva Ley Hipotecaria y su Reglamento entraron en vigor en 1893. Su artículo 397 dice en parte como sigue:

"Los asientos contenidos en los libros del Registro existentes en las Contadurías, Anotadurías o Receptorías de hipotecas, producirán los efectos que les correspondan, según la legislación anterior a la fecha en que se planteó la ley Hipotecaria en las respectivas islas de Ultramar, si los referidos asientos se hubiesen trasladado o se trasladasen a los libros modernos del Registro.

"Los asientos de censos, hipotecas, gravámenes y cualquiera otra clase de derechos reales, contenidos en los indicados libros existentes en las Contadurías, Anotadurías o Receptorías de hipotecas, deberán ser trasladados a los del moderno Registro dentro del término de un año, a contar desde la promulgación de la presente ley. Dicha traslación deberá verificarse a instancia de parte.

"Si la traslación se solicitase por instancia dirigida al Registrador dentro de dicho plazo, los efectos de la traslación se retrotraerán a la fecha de la toma de razón en los antiguos libros, haciéndolo constar

---

[1] De acuerdo con el artículo 456 del Reglamento para los efectos de la ley Hipotecaria y su Reglamento son libros o registros antiguos los anteriores al día 1 de mayo de 1880 y modernos los posteriores a esa fecha.

así en los nuevos. Si la solicitud de la traslación se verificase en fecha posterior, no podrá perjudicar a tercero. . . .''

El artículo correspondiente del Reglamento establece en parte como sigue:

''Art. 449. Para que los asientos de dominio contenidos en los libros antiguos de registro, a que se refiere el párrafo primero del art. 397 de la Ley, produzcan en cuanto a tercero los efectos señalados en la legislación vigente cuando se hicieron los citados asientos, es indispensable que se trasladen a los libros modernos. Esta traslación deberá solicitarse por escrito, sujetándose a los trámites que marcan los artículos siguientes y podrá pedirse en cualquier tiempo. Si la traslación no se verificase, seguirán surtiendo sus efectos, aunque no contra tercero, dado lo dispuesto en el mencionado párrafo primero del art. 397, sino solamente entre los interesados y aunque carezcan de alguno de los requisitos que bajo pena de nulidad exigen los artículos 9º. al 13 de la ley, conforme dispone el párrafo último del mismo art. 397.

''Los asientos que no sean de dominio a que se refiere el párrafo segundo del art. 397 de la ley, tendrán que ser trasladados para que perjudiquen a tercero en el plazo de un año, contado desde la promulgación de la ley; esta traslación se solicitará por escrito dentro del referido término, con sujeción a los artículos siguientes, surtiendo todos sus efectos desde la fecha de la toma de razón en los antiguos libros, aunque la traslación se verifique con posterioridad, siempre que la instancia se haya presentado dentro del año referido. . . .''

De conformidad con dichos artículos la protección proveniente de la inscripción en los antiguos libros podía conservarse siempre y cuando que dichos asientos fueran trasladados a los modernos libros de Registro. Y estando pendiente la consumación de dichos traslados, cualquier mención en los libros modernos, al inscribirse transacciones nuevas, sólo obligaba a las partes que reconocieran expresamente en sus contratos la existencia del gravamen envuelto. Hasta que fueren debidamente inscritos en el registro moderno estos contratos por tanto creaban sólo una obligación personal. Y de no efectuarse el traslado, la mención del gravamen no podía obligar a aquellos quienes, después de la vigencia de

la Ley, adquirieron la propiedad envuelta sin reconocer la existencia de tal gravamen. Esto, desde luego, no tenía efecto en la existencia continua de una obligación personal por parte de aquellos que expresamente la habían reconocido.

 Morell, comentando estos artículos de la Ley Hipotecaria y su Reglamento, describe como tercero a aquel que adquiere bienes inmuebles bajo las circunstancias antes expuestas. Hace el siguiente comentario sobre el artículo 397, párrafo 3:

"Según este párrafo, los asientos antiguos cuya traslación no se solicita en el término de un año, no perjudican a tercero mientras no se trasladen; pero no se borran, no desaparecen, porque la traslación puede después verificarse a instancia de parte en cualquier tiempo; lo único que ocurre, es que si se trasladan después del año, no perjudican al tercero, dice el artículo, sólo perjudican a tercero desde la fecha de la traslación, debe decir. En otro caso la traslación sería inútil.

"Parecía deducirse del proyecto de reforma de donde se han tomado estas disposiciones, que el dueño actual del inmueble no se podía considerar tercero. En el silencio de la ley debe entenderse tercero el que no hubiese sido parte en el acto o contrato inscrito. Si el dueño continúa siendo el mismo que en la época en que se constituyó, reconoció, modificó o inscribió el gravamen, podrá no ser tercero; *pero si es ya una persona distinta debe considerársele como tal.*" (Bastardillas nuestras).²

También comenta el artículo 449 del Reglamento, como sigue:

"Los asientos de dominio extendidos en el antiguo Registro pueden trasladarse al Registro moderno en cualquier tiempo. Mientras no se trasladen no perjudican a tercero. Una vez trasladados, ¿perjudican a tercero solamente desde la traslación, o se retrotraen sus efectos a la fecha del asiento antiguo? Como no se sabe si han de llegar a ser trasladados, y si la traslación no se verifica, sólo producen esos asientos efecto entre los interesados, *es probable y debe suponerse que no podrán ser perjudicados los terceros que hayan adquirido*

(²)Legislación Hipotecaria de Ultramar, anotada por José Morell, Madrid, 1893, pág. 112.

*algún derecho sobre la finca desde la publicación de la ley hasta que la traslación tenga efecto."* (Bastardillas nuestras).[3]

Por tanto la situación era que el traslado podía efectuarse aun después de expirado el año, pero que sólo afectaría compradores posteriores, que no hubieran reconocido la existencia del gravamen desde la fecha en que se verificó el traslado. Sin embargo, la falta de un período fijo prescriptivo para el traslado a los libros modernos vino a crear un estado de incertidumbre en el Registro. Por tanto la Legislatura aprobó las Leyes número 12 de 1923 y 1924, las partes pertinentes de las cuales se copian en el margen.[4] Los términos de estas leyes reflejan el propósito de la Legislatura para disponer la cancelación de aquellas menciones que aparecían, bien en los antiguos o nuevos libros luego de

[3] Legislación Hipotecaria de Ultramar, anotada por José Morell, Madrid, 1893, pág. 260.

[4] La Ley número 12 de 1923 ((2) pág. 37) provee en parte como sigue:

"Ley regulando el procedimiento para la cancelación de gravámenes y menciones de derechos y la extinción de ciertas inscripciones y anotaciones, por lapso de tiempo, en el Registro de la Propiedad.

"Decrétase por la Asamblea Legislativa de Puerto Rico:

"Sección 1.—Los registradores de la propiedad a instancia escrita de parte o de su representante, autenticada ante notario, procederán a cancelar en el respectivo registro:

"(a) Las menciones de hipotecas, de censos y de otros derechos para el pago de dinero o precio aplazado de la compraventa de inmuebles, ya consten en los antiguos y modernos libros del registro, si hubieren transcurrido más de veinte (20) años desde que se verificó la respectiva mención, cuando la parte interesada no solicitare la inscripción del derecho mencionado dentro del plazo de un año siguiente al día en que empiece a regir esta Ley, o promoviere, dentro de ese período, demanda en reclamación de su derecho, anotándola en el registro."

Esta Ley fué enmendada por la número 12 de 1924 (pág. 109) para que lea como sigue:

"(a) Las menciones de hipotecas o de precio aplazado de la compraventa de inmuebles, ya consten en los antiguos y modernos libros del registro si hubieren transcurrido más de veinte (20) años desde que se verificó la respectiva mención, cuando la parte interesada no hubiere solicitado la inscripción del derecho mencionado dentro del plazo de un año siguiente al día 29 de agosto de 1923, o hubiere promovido, dentro de ese período, demanda en reclamación de su derecho, anotándola en el registro. Las menciones de censo no se cancelarán en los antiguos o modernos libros del registro cuando la parte interesada solicita la traslación del asiento o mención del derecho mencionado a los modernos libros del registro dentro del plazo de dos años a contar desde el día en que empiece a regir esta

haber transcurrido 20 años,[5] de no dar las partes interesadas los pasos necesarios para hacer efectivos sus derechos.

Como hemos visto, la Legislatura, al aprobar los artículos 397 y 449, no estableció un término fijo para la traslación definitiva de los asientos de los antiguos a los nuevos libros, transcurrido el cual no pudiera efectuarse tal traslación. En su consecuencia, de acuerdo con dichos artículos, se podía efectuar la traslación aun después de expirado el año. Esta era una situación desgraciada, en vista del hecho de que bienes inmuebles que aparentemente de los nuevos libros estaban libres de gravámenes, podían estar gravados y con ello afectar futuros compradores, o perjudicar de esta suerte el crédito territorial. Examinadas a la luz de estas circunstancias, es claro que las nuevas leyes, adicionadas a la Ley Hipotecaria como los artículos 388 $a$, 388 $b$ y 388 $c$, no fueron simplemente una nueva promulgación de lo que ya se había dispuesto en los artículos 397 y 449. Esto hubiera sido innecesario, ya que como hemos visto dichos artículos no establecieron fecha fija de prescripción dentro de la cual debiera efectuarse la traslación. Por tanto es obvio que uno de los propósitos de las Leyes de 1923 y 1924 fué fijar un término definitivo dentro del cual efectuar la traslación. Si dentro de dicho término no se hace tal solicitud, se renunciaba a la garantía que la inscripción en el registro conlleva, aun cuando la obligación personal entre las primitivas partes contratantes continúa subsistiendo. Expirado el término provisto en las Leyes de 1923 y 1924, cualquier parte

Ley o promueva dentro de ese período, demanda en reclamación de su derecho, anotándola en el registro; *Disponiéndose, además,* que dichos registradores de la propiedad a instancia escrita de parte o de su representante, autenticada ante notario, procederán a cancelar también en el respectivo registro cualesquiera otras menciones de derechos para pago de dinero, que no se refieran al precio aplazado de la compraventa de inmuebles, cuando no se fije plazo, o no se indique en el título que motiva la mención que se constituye un gravamen sobre el inmueble, si hubieren transcurrido más de cinco años.''

([5])Los 20 años empiezan a contarse desde la fecha de la primera mención. (*Hernáiz, Targa & Co.* v. *Registrador,* 49 D.P.R. 660.)

interesada podía solicitar del Registrador, de conformidad con las mismas, la cancelación de las menciones que afectaban su propiedad. Esto es exactamente lo que ocurrió en este caso. Y el demandado, habiendo adquirido la propiedad después de efectuarse la cancelación de la mención en el registro y sin haber reconocido su existencia, era un tercero.[6]

*La sentencia de la Corte de Distrito declarando con lugar la excepción previa a la demanda será confirmada.*

### EN MOCION DE RECONSIDERACION
#### Julio 28, 1944.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Fundamentando su moción de reconsideración presentada en este caso, la apelante suscita dos cuestiones: (1) que es errónea aquella parte de nuestra opinión que se refiere a la obligación personal del dueño de la finca acensuada; y (2) que en el presente caso la mención del censo a favor de la apelante no podía ser cancelada en los modernos libros porque se trata de una mención expresa reconocida por todos los que fueron dueños de la finca acensuada con anterioridad a Neftalí Reyes.

En cuanto a la primera cuestión tiene razón la apelante. Como dice Manresa, el censo es un derecho real inseparable de la cosa sobre la cual se constituye. En nada afecta a la persona. Es por esa razón que, si se enajena la finca a un tercero, el cedente queda libre del censo, y la carga pasa al cesionario como dueño o poseedor del inmueble gravado. La única obligación personal que la ley impone al dueño de la finca es el pago de las pensiones que se devenguen mientras haya sido dueño, aunque se interponga la reclamación después de haber cesado como tal.

---

(6)El caso de *Comunidad Religiosa etc.* v. *Fernández,* 61 D.P.R. 133 es distinguible, porque en dicho caso el censo estaba debidamente inscrito, y no meramente mencionado.

■■ No estamos conformes con la segunda contención de la apelante expuesta en su moción de reconsideración. La Ley Núm. 12 de 29 de agosto de 1923 ((2) pág. 37) tiene por objeto, según indica su título, proveer un "procedimiento para cancelación de gravámenes y menciones de derechos y la extinción de ciertas inscripciones y anotaciones, por lapso de tiempo . . . ". La Ley Núm. 12 del 25 de junio de 1924 (pág. 109), que enmendó el inciso (a) de la sección 1ª. de la Ley de 1923, persigue el mismo propósito. En ninguna de ellas se establece distinción entre menciones expresas y menciones de oficio.

El inciso (a) de la sección 1ª., según fué enmendado el 25 de junio de 1924, refiriéndose a las menciones de censos, prescribe que no se cancelarán de los antiguos o modernos libros del registro, cuando la parte interesada solicite la traslación del asiento o mención del derecho mencionado a los modernos libros del registro, dentro del plazo de dos años a contar desde el día en que empiece a regir dicha ley del 25 de junio de 1924, o dentro del mismo período radique demanda en reclamación de su derecho, anotándola en el registro. En Cuba, donde existe una Ley Hipotecaria igual a la nuestra, salvo ligeras variaciones con motivo de las enmiendas de que dicha ley ha sido objeto en uno y otro país, al tratar de cancelación de menciones, expresamente se exceptuaron aquellas que aparecían reconocidas en los títulos por los interesados—es decir, en Cuba se exceptuaron las menciones expresas de una disposición sobre cancelación similar a la que aquí existe. Pero en nuestras Leyes no encontramos tal exención. Bajo la Ley Núm. 12 de 1923 la apelante tenía un año desde el día en que empezara a regir dicha ley para solicitar la anotación del derecho mencionado o para instituir demanda reclamando su derecho junto a la anotación de la misma en el registro. Por la Ley Núm. 12 de 1924 este período fué aumentado a dos años. Sin embargo, la

apelante no hizo uso de este derecho, y la mención, como hemos visto, fué cancelada.

Toda vez que el primer error señalado en la moción de reconsideración no afecta el resultado a que llegamos en este caso, y no existiendo el segundo error alegado, *la moción de reconsideración será declarada sin lugar.*